**ORIGINAL**

**CV18-1852**

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

**DeARCY HALL, J.**

**ORENSTEIN, M.J.**

| | |
|---|---|
| ERIC FERRIER | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: |
| | ) |
| v. | ) |
| | ) **JURY DEMAND** |
| | ) |
| Q LINK WIRELESS LLC. ISSA ASAD, | ) |
| JOE DOE 1-5 | ) |
| Defendants. | ) |

RECEIVED MAR 27 2018 PRO SE OFFICE

## COMPLAINT FOR COPYRIGHT INFRINGEMENT AND TORTIOUS INFERENCE

Plaintiff, Pro-Se, for his complaint against Defendant, alleges:

### JURISDICTION AND VENUE

1. This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States (17 U.S.C. § 101 et seq.).

2. This Court has jurisdiction under 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (copyright), 18 U.S. Code § 2319 and § 1503 (racketeering activity of copyright) and 15 U.S.C. § 1125 (Lanham Act False Designation of Origin)

## THE PARTIES

3. Plaintiff, ERIC FERRIER, mentioned as the Plaintiff herein, mailing address is 178 Columbus Ave #237002 NEW YORK NY 10023.

4. Defendant QLINK WIRELESS LLC is a Florida for Profit Corporation with principal address at 499 EAST SHERIDAN STREET SUITE 400 DANIA, FL 33004 US. The Corporation shall be financially able to provide Lifeline-supported services and not rely exclusively on USF disbursements to operate their services. The Section 214(e)(1)(A) of the FCC Act requires an ETC to offer USF-supported services to some extent over its own facilities. The Federal Communications Commission ("FCC" or "Commission") has forborne from that requirement carriers that are, or seek to become, Lifeline-only ETCs. Q LINK has avail itself of the FCC's conditional grant of forbearance by filing a Compliance Plan outlining the measures it will take to implement the conditions of forbearance. QLINK is responsible for the initial determination and annual recertification of consumer eligibility. A true copy of a FCC petition is attached as exhibit A. Plaintiff Eric Ferrier is a former 1099 QLINK WIRELESS LLC's contractor. There is no written agreement and the Plaintiff has no fiduciary duties to the Defendant.

5. ISSA ASAD is the Manager of QUADRANT HOLDING LLC which is QLINK WIRELESS LLC managing entity. His principal address is showing ASAD, ISSA 499 ST SHERIDAN STREET SUITE 400 DANIA BEACH, FL

33004 on QUANDRANT HOLDING GROUP LLC on the Florida annual report as of 05/30/2013. JOE DOE 1-5 are parties whose really name are unknown to the Plaintiff and who have invested in the ventures and tortuously inferred with the Plaintiff by the mean of inappropriate references. Their identity is protected by ISSA ASAD who is been refusing to provide their full name to date.

## OTHER PARTIES

6. SPRINT is a nationwide carrier that provides wholesale capacity on its wireless network to wireless providers. Q LINK wireless telecommunications services are provided by Sprint Nextel ("Sprint") network on a wholesale basis to offer nationwide service. Q LINK has obtained from Sprint the network infrastructure and wireless transmission facilities to operate as a Mobile Virtual Network Operator ("MYNO"). Q LINK was designated as an ETC in Maryland on December 21, 2011.

## BACKGROUND OF QLINK WIRELESS LLC AND ITS FOUNDERS

7. QLink Wireless is managed and owned by Quadrants Holding LLC, a privately owned company and its Capital Structure is unknown.

8. ISSA ASAD has also been involved in other online ventures including XM Brands Inc venture that was subject to civil litigations in excess of $500,000 for unjust enrichment by EPIC MEDIA GROUP Inc and by Transac Plus LLC in Florida State Civil circuit.

## PLAINTIFF BACKGROUND

9. No Security Clearance or background check authorization was required for the position and the Plaintiff has not provided Defendant an authorization to complete a background check. No certifications or professional accreditation was required for the Job.

10. Plaintiff seeks the aid of equity with clean hands and has no fiduciaries duties to the Defendant having compel with over one year non-compete term imposed by Defendant by mean of vexatious process and threat of sue.

## STATEMENT OF FACTS REGARDING EMPLOYMENT

11. The Plaintiff was a 1099 independent contractor, a true copy of the 1099 is attached as exhibit B with a year round full time (approximately 2,040 hrs that includes 40 hrs of paid vacation) salary of $55,000. There is no written contract agreement and the Plaintiff was free of his schedule as long as the work was completed during the Defendant business hours.

12. Eric Ferrier is a U.S. Citizen and as such, under Sec. 1992 of U.S. Revised Statutes he shall "… have the same right, in every State and Territory in the United States to make and enforce contracts, to sue, be parties, and give evidence, to inherit, purchase, lease, sell, hold, and convey real and personal property, and to full and equal benefit of the laws and proceedings for the security of person and property…"

13. The Bureau of Labor Statistics (BLS) is the principal fact-finding agency for the Federal Government in the broad field of labor economics and statistics. The BLS defines a computer programmer role to create, modify, and test code, forms, and script that allow computer application to run, Work from specifications drawn up by the software developers or other individuals. May assist software developers by analyzing user needs and designing software solutions; May develop and write computer programs to store, locate and retrieve documents, data, and information.

The BLS reports annual computer programmer 2014 salary to range between $77,600 and $119,760 in Southern Florida.

14. The BLS defines a software developer role to research, design, develop, and test operating system-level software, compiler, and network distribution software for various industry including telecommunications; set operational specifications and formula and analyze software requirements. May design embedded system software. Apply principles and techniques of computer science, engineering and mathematical analysis. The BLS reports annual software developer 2014 salary to range $81,560 and $90,700 in Southern Florida.

15. The Plaintiff responded to a craiglist.com posting similar as the exhibit C. He has been employed by QLINK WIRELESS since its foundation 10/11/2011 as a 1099 IT Contractor.

16. There is no form of benefits such as the typical health insurance, tuitions reimbursements, sick days, 401K, or training but for 5 days (40 hrs) of paid vacation. The position did not require a security clearance or background check.

17. Requirements were assigned by mean of posting to a project tasks log, short emails fragment or unscheduled face to face meetings with the CTO. No other formal documentation has ever been provided. The WORK was prepared by two or more authors with the intent to combine their contributions into inseparable or interdependent parts, the work should be considered joint work and the authors should be considered joint copyright owner

18. The tasks log included design and research system-level software solutions, instructions to assist the System Developer founder CTO, to create, to modify, and to test code, forms, and scripts to allow the computer web and database application to run the Customer Relationship System that supports the Shipping and Customer Service Department functions. Plaintiff worked directly from specifications drawn up by the Chief Technology Officer of QLINK WIRELESS INC;.

19. The employment was terminated at non cause on November 2013 having been told that "... salary was not negotiable, if he did not want to work he could leave. " upon requested a fair compensation in view of the work load, complexity of the requirements and the Company having emerged from the initial development phase to be profitable and enrolling users in the Service.

20. In spite of the hostile work environment and of the HIGH DEVELOPER TURNOVER rate, the Plaintiff has provided computer programming services and testing since the foundation of the company with the expectation of a fair compensation. Typical software developer would work LESS THAN 3 months mainly on the front end parts of the application. The Defendant has accepted and enjoyed the benefits of the system by enrolling over 80,000 customers to lifeline benefits at the date the employment was terminated generating over $800,000 of monthly income and was profitable.

21. Programming services were accepted and a reasonable person receiving the benefit and similar computer programming services would have expected to pay a fair and reasonable value under fair labor statistics.

22. Pressure for deliverables, timelines and requirements were not realistic. One year after the Plaintiff termination the Company was still looking for a Programmer to fulfill the vacated position.

23. Typically, a consultant or career-switcher may pay a ghostwriter to write material in their professional area, to establish or enhance her or his credibility as an 'expert' in their field. Ghostwriters may have varying degrees of involvement in the finished work. The division of work between the ghostwriter and the credited author varies a great deal. The ghostwriter can be cited as a coauthor of the finished WORK. Sometimes it is done in lieu of pay or in order to decrease the amount of payment to the WORK ghostwriter for whom the credit has its own intrinsic value in the form of a JOINT Copyright.

24. Some web applications are ghostwritten, because not all authors have the information technology skills or the time to dedicate to running a website. Nonetheless, the style, tone and content is modeled on that of the credited author. Many website ghostwriters are freelance but some are freelancers work under contract which typically includes intellectual property or proper designation of origin.

25. The Core applications technology was under a Microsoft License that provides for Developers to copyright their work. Under the same agreement, Microsoft would not provide any warranty on their software. The Plaintiff has not received a fair and equitable share of the profit and is complaining accordingly of having treated unfairly in respect to his right for a fair remuneration under copyright laws.

26. The term DevOps developed out of a recognition that you have to integrate development and operations tasks to develop software efficiently. An application can be developed deployed it, learned from production usage of it, changed in response to what is learned. The cycle can be repeated quickly. Continuous integration (CI) means that whenever a developer checks in code to the source repository, a build is automatically triggered. Continuous delivery (CD) takes this one step further: after a build and automated unit tests are successful, you automatically deploy the application to an environment where you can do more in-depth testing.

27. Qlink DevOps environment was of a Continuous Delivery type and Software build were checked in, MERGED IN and deployed once to twice a week preferably on Wednesday or Thursday's. As the result the WORK was merged into inseparable or interdependent parts of the full stack web application and database

28. Builds were weekly tested automatically and manually by at least two different persons before to be deployed. All serious issues including tracking

shipping and fraud detection prevention, handling transient faults by implementing intelligent retry logic, minimizing throughput, latency, and connection problems of Azure environment by upgrading to cloud database access, potential implementation of loose coupling via the queue-centric work patterns, used of good monitoring and telemetry software were directly escalated to the CEO who was ultimately responsible for the final decision GO no GO decision.

29. QLINK Wireless and funders had at all time access to all source code, deliverables, network credential and Plaintiff Work because the application was hosted on-premises where web server and database server were physically located.

30. In a late response to a discrimination complaint filed in the US District of Southern Florida in late 2016, the Defendant responded that the Plaintiff was not under contract, not an employee of QLink Wireless and not entitled to seek the relief of a typical employee under EEOC's.. Discovery also yielded that the Plaintiff had been abused as a ghost writer author a CRM and Database system he will not be credited for his work

31. Discovery yielded that the Qlink Wireless typically IT Staff was small and turnover high.

32. The registration of the JOIN WORK took an unusual amount of time and a database compilation filing is still pending. The filing timelines coincide with a TRAFFIC ACCIDENT out of the Negligence of a third party driver who caused serious injury to the Plaintiff and delay the filing of the above captioned Complaint.

33. The Plaintiff is been experiencing an extensive period of erratic employments, short terms contracts and unemployment since the termination. A Programmer with Plaintiff similar education, who would have received full credit for his work, would have been able to work in a similar occupation including the telecommunication industry.

34. Defendants have hinder, delayed, concealed facts related to the conveyance of rights and the Plaintiff request timelines to be waved accordingly.

## FIRST CAUSE OF ACTION

## INFRINGEMENT OF COPYRIGHTS

### (All Defandants)

35. The allegations contained in paragraphs 1 through 34 of the complaint are realleged and incorporated herein by reference.

36. Plaintiff is, and at all relevant times is entitled to be, the copyright joint owner or joint licensee of exclusive rights under United States copyright with respect to the copyrighted SOFTWARE, including but not limited to the copyrighted applications, each of which is the subject of a Certification of Copyright Registration issued by the Register of Copyrights (the " CRM Database & Metadata compilation " and the "CRM Web Portal") (Registration Number TXu002025577 and the Registration for a Database compilation that is still pending application 1-3610585301)

37. Plaintiff is informed and believes that Defendant, without the permission or consent of Plaintiff or sharing profit, has used, and continues to use the JOINT WORK, database and CRM system respectively copyrighted as "CRM Database & Metadata compilation" and the "CRM Web Portal" to support their Customer Service and Shipping Departments so to enroll new customers and provide for Lifeline support services. In doing so, Defendant has violated Plaintiffs' joint rights of reproduction and distribution. Defendant's actions constitute infringement of Plaintiffs' copyrights and share of the revenue rights under copyright laws.

38. Plaintiff is informed and believes that the foregoing acts of infringement have been willful and intentional, in disregard of and with indifference to the rights of Plaintiff.. Most of the CRM system, WCF process, database and metadata currently used if not all are identical to the infringed registered joint software database.

39. Many screen display interface elements if not all are identical to the infringed joint software web interfaces below and as exhibit D.



Print Screen

40. As a result of Defendant's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to at least statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's infringement of each of the Copyrighted material. Plaintiffs further are entitled to their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

41. The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money in the form of restrictive covenant. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyrights, and ordering Defendant to share profit made in violation of Plaintiff's joint rights.

42. The Defendant has engaged in Civil Theft under Florida Statute 772.11, unfair and/or deceptive acts or practices by unjustly themselves enriched of a transaction management system, database, and customer relationship software and derived income of at least $800,000 a month since the date of the termination.

WHEREFORE Plaintiff respectfully requests the following relief:
   a. Award Plaintiff a Judgment for Copyright Infringement
   b. Award such other relief as this Court may deem just and proper

## SECOND CAUSE OF ACTION
## (FRAUD AND FRADULENT TRANSFER 11 U.S.C. 548, SEQ.))
### Against ISSA ASAD

43. Plaintiff refers to and incorporates paragraphs 1 to 34 above as though fully set forth herein.

44. Defendant has ignored demand for fair compensation and offer of settlement including demand made via EOCC and Florida Human Commission to Mediate unfair employment practices

45. ISSA ASAD, Owner Manager has transferred the WORK to trusted entity that he maintains control with intent to defraud the Plaintiff amongst others and hinder and delay their ability to received a fair compensation and to raise a shield to protect his personal financial liability.

46. ISSA ASAD ventures are funded by private undisclosed investors who are receiving share of profit of WORK and DERIVED INFREGED WORK unfairly.

WHEREFORE Plaintiff respectfully requests the following relief:
   a. Award Plaintiff a Judgment for Fraudulent Transfer

    b. Award such other relief as this Court may deem just and proper including a discovery hearing to compel Defendant to provide name of the TRUSTEE Entity recipient of the Transfer of rights.

## THIRD CAUSE OF ACTION
## (TORTUOUS INFERENCE WITH EMPLOYMENT AND UNFAIR BUSINESS PRACTICES under Title 18 U.S.C. § 2319, § 1503, Title 15 U.S.C. § 1125)

### Against All Defendants

47. Plaintiff refers to and incorporates paragraphs 1 to 34 above as though fully set forth herein.

48. Defendant's conduct in regard to their Domain Web Applications, Software, CRM, Database system constitutes a false designation of origin and a false representation of facts in connection with goods and services, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49. Plaintiff has been damaged by Defendant's conduct and is likely to be damaged in the future. Defendant conduct has also caused irreparable injury to the Plaintiff consulting goodwill and reputation, an injury which is and continues to be ongoing and irreparable. Plaintiff lacks an adequate remedy at law, and an award of monetary damages alone cannot fully compensate for his injuries.

50. Defendants have intruded Plaintiff affairs conducted unauthorized background check and volunteer unsolicited references to prospective employers and other administration,

51. Defendants have acquired knowledge of Plaintiff work inquiries; skip traced his work history, invade the Plaintiff privacy, imposed non compete terms by the

mean of thread to sue with the intent to infer with the Plaintiff ability to seek employment in similar industry in similar position.

52.     Defendant has intentionally interfered with Plaintiff ability to copyright derived work by the mean of false and misleading misrepresentation, false accusations and other defamations.

53.     Defendant's intentional interference is without justification. Their conduct has jeopardized Plaintiff ability to perform Software Development for not only Defendant Competitors but also for other Customer Management System provider.

>WHEREFORE Plaintiff respectfully requests the following relief:
>c. Award Plaintiff a Judgment for Tortuous inference.
>d. Award such other relief as this Court may deem just and proper.
>e. Award an injunction for relief

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For an injunction providing: "Defendant shall be and hereby is enjoined from directly or indirectly infringing Plaintiffs' joint rights under federal or state law of the Copyrighted Database and CRM, whether now in existence or later created, that is jointly owned by Plaintiff except pursuant to a lawful shared license or with the express authority of Plaintiff.
2. For statutory damages or actual discovery damages in the form of a share of the profit for each infringement of each Copyrighted Material pursuant to 17 U.S.C. § 504.
3. For Plaintiff's costs in this action.

4. For Plaintiff's reasonable attorneys' fees that may incurred herein.

5. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,                                        Dated: March 27th, 2018

By: _____

Eric Ferrier Pro-Se

178 Columbus Ave #237002

New York NY 10023

Ph: 646 450-2923

Fax: 646 219-1080

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, Eric Ferrer, counsel for PROSE LITIGANT, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

- [✓] monetary damages sought are in excess of $150,000, exclusive of interest and costs,
- [✓] the complaint seeks injunctive relief,
- [ ] the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?   [ ] Yes   [✓] No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?   [ ] Yes   [ ] No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?   [ ] Yes   [ ] No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?   [ ] Yes   [✓] No
(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

[ ] Yes    [ ] No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

[ ] Yes   (If yes, please explain    [ ] No

I certify the accuracy of all information provided above.

Signature: _____

Last Modified: 11/27/2017